NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

TIMOTHY GROSSMAN, Plaintiff, v. JOSEPH VENTRESSCA, et al., Defendants.

Hon. Joseph H. Rodriguez

Civil Action No. 07-1545

OPINION

RODRIGUEZ, Senior District Judge:

This matter comes before the Court on several motions: First, Plaintiff Timothy Grossman ("Plaintiff" or "Grossman") moves for an entry of default judgment [8]. Second, Defendants Joseph Ventressca ("Ventressca"), Stockwell-Knight Company, Inc. ("Stockwell Company"), and JVS Moorestown, LLC ("JVS Moorestown")[1] cross-move to set aside the default previously entered against them [10]. Third, Defendants cross-move to dismiss Count I of the Complaint for failure to state a claim upon which relief can be granted. Fourth, Defendants cross-move to dismiss the remaining counts in the Complaint for lack of subject matter jurisdiction [10].

In his response brief, Grossman indicated that he does not oppose Defendants' cross-motion to vacate the entry of default. (See Pl. Res. Br., p. 1.) Presumably, this also means Plaintiff is no longer pursuing his motion for the entry of default judgment. The

[1]Ventressca, Stockwell Company, and JVS Moorestown will frequently be referred to collectively as "Defendants."

Court will therefore enter an Order reflecting these developments. Moreover, for the reasons discussed in the remainder of this Opinion, the Court will grant Defendants' cross-motion to dismiss Count I of the Complaint for failure to state a viable claim, as well as their cross-motion to dismiss the remainder of the Complaint for lack of subject matter jurisdiction.

## I. BACKGROUND

In September 2004, Defendant Ventressca and his non-party business partner contracted to purchase, *inter alia*, Defendant Stockwell Company, which is the sole owner of the Stockwell-Knight Insurance Company ("Stockwell Insurance"). After entering into this purchase agreement, Ventressca and his business partner formed Defendant JVS Moorestown and assigned their purchase rights, including their right to purchase Stockwell Company, to JVS Moorestown. Subsequently, JVS Moorestown consummated the purchase of Stockwell Company. At the time JVS Moorestown acquired Stockwell Company, Plaintiff Grossman was employed by Stockwell Insurance.

Defendants desired to keep Grossman as an employee after JVS Moorestown's acquisition of Stockwell Company. Thus, on November 1, 2004, Plaintiff and Stockwell Company entered into a contract of employment ("Employment Agreement" or "Agreement"), which is the epicenter of the dispute in this case. The Employment Agreement provided that Grossman would serve as president of Stockwell Company. (Pl. Compl., Exh. A., ¶ 1(a).) In exchange, Plaintiff was to receive several forms of

compensation, including an annual salary of $80,000, a $500 monthly car allowance, and medical insurance. (Id., Exh. A., ¶ 4.)

The Employment Agreement contained a provision concerning the term of Grossman's employment. This provision stated that "[t]he Employment Term shall begin on the date [of the Agreement's execution] and shall continue for a two year rolling contract which is defined as one in which Stockwell [Company] must give two year notice to terminate." (Id., Exh. A., ¶ 3.) This provision added that "during such two year period, there shall be no change in title, status or compensation." (Id.)

The Employment Agreement also featured detailed provisions relating to Plaintiff's possible termination. For example, it granted Stockwell Company the right to terminate Grossman on fifteen days notice and without any compensation for a variety causes. (Id., Exh. A., ¶ 5(c).) The Agreement also gave Stockwell Company the right to terminate Plaintiff without cause "by giving [Grossman] 30 days' notice of its intent to terminate prior to the completion of the purchase of [Grossman] into Stockwell." (Id., Exh. A., ¶ 6.) However, doing this "would trigger the two year rolling notice. During the two years [Grossman] must fulfill his duties as proscribed in [the Employment Agreement]." (Id.)

Apparently, Defendants were disappointed with the quality of Stockwell Insurance's business. Thus, in 2005, Stockwell Company unsuccessfully attempted to sell Stockwell Insurance to another company. There was also some discussion that Grossman

himself might purchase Stockwell Insurance. However, this, too, failed to materialize. Ultimately, in January 2007, Stockwell Insurance entered into an agreement to sell its assets to a company called AJM Personal Lines, LLC ("AJM").[2] The original purchase price AJM agreed to pay for Stockwell Insurance's assets was $750,000, including $200,000 that was attributable to a covenant not to compete to be signed by Ventressca and Grossman.[3] Plaintiff claims he did not wish to sign such an agreement, but ultimately did so after Ventressca allegedly "intimidated and coerced" him. (Pl. Compl., ¶ 48.)

Because Grossman had determined not to work for AJM, Ventressca told Plaintiff that Stockwell Company would continue to employ him until thirty days after the sale's settlement. Relying on the Employment Agreement's two-year notice provision, Grossman contended that he was entitled to severance as a consequence of his termination. According to the Complaint, Ventressca acknowledged that Stockwell Company owed Plaintiff the severance, but did not want to pay it. (Id., ¶ 18.) Ultimately, in early March 2007, Ventressca sent Grossman a letter terminating his employment for a variety of causes. Plaintiff contends these causes were fabricated in order to avoid having

[2] According to the Complaint, AJM did not acquire Stockwell Insurance's liabilities as part of this transaction and, in any event, Stockwell Insurance agreed to indemnify AJM for all claims. (See Pl. Compl., ¶¶ 16-17.) For these reasons, Plaintiff did not join AJM as a defendant in this action. (Id., ¶ 17.)

[3] In their moving brief, Defendants indicate that the purchase price was reduced to $715,000 after AJM conducted its due diligence. (See Def. Br., p. 4.) Additionally, the portion of the purchase price attributed to the non-competition agreements was apparently reduced to $160,000. (See id.)

to pay his severance. (See id.)

Plaintiff initiated this action on April 3, 2007 primarily in order to obtain his severance, which he calculates as two years' salary and car allowance, plus the value of two years' worth of vacation and health benefits.[4] (See id., ¶ 15.) The Complaint contains six counts. In Count I, Plaintiff alleges that Defendants' failure to pay him severance constitutes a violation of the Employee Retirement Income Security Act ("ERISA" or "Act"), 29 U.S.C. §§ 1001, *et seq*. Count II posits that Defendants' failure to pay the severance also constitutes a breach of the Employment Agreement. In Count III, Plaintiff claims he was fraudulently induced into signing the Employment Agreement by Defendants' alleged representations that he would be paid a severance upon termination. Count IV alleges that Defendants violated a New Jersey statute pertaining to the payment of wages. Count V asserts a declaratory action and appears to be a recapitulation of Plaintiff's breach of contract claim. Finally, in Count VI, Plaintiff alleges that Defendants were unjustly enriched when AJM paid Stockwell Insurance for the non-competition agreements because he signed one of those agreements, but received no consideration for doing so.

Defendants now move to dismiss the Complaint in its entirety on two main

---

[4]In actuality, the Complaint specifically characterizes as "severance" only the two years' salary. (Pl. Compl., ¶ 15.) However, Grossman claims he is entitled overall to two years' salary and car allowance, as well as the value of two years' vacation and health benefits. (See id.) Since the basis for his claim to these benefits is the alleged severance arrangement, it is appropriate to characterize all of the benefits as severance.

grounds. First, they argue that Plaintiff's ERISA claim fails to state a claim because the Complaint does not allege the existence of a plan governed by ERISA and because they are not the proper parties against whom Plaintiff can assert an ERISA claim. Second, they contend that, if the Court dismisses the ERISA claim, it should likewise dismiss the balance of the Complaint since the remaining counts plead state law causes of action for which there are no independent bases for federal subject matter jurisdiction.

For his part, Grossman contends that he adequately alleges the existence of an ERISA-governed plan and claims that the severance arrangement "ha[s] the trappings of an ERISA 'top-hat plan.'" (Pl. Res. Br., p. 6.) However, Plaintiff offers no argument regarding Defendants' contingent motion to dismiss the state law claims for lack of subject matter jurisdiction, except to summarily state that the Court should not do so. (See id., p. 10.)

## II. DISCUSSION

### A. Plaintiff's ERISA Claim Fails to State a Claim Upon Which Relief Can be Granted

#### *1. Standard on a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)*

A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6); see In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Id. at 1965 (internal citations omitted).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration. Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). A district court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). Moreover, these allegations and inferences must be viewed in the light most favorable to the plaintiff. Id. However, a court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness," Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005)) ("[A] court need not credit either 'bald assertions' or 'legal conclusions'

in a complaint when deciding a motion to dismiss.").

It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974.

*2. Analysis of Defendants' Motion to Dismiss Plaintiff's ERISA Claim*

Count I of the Complaint seeks recovery under ERISA for Defendants' "fail[ure] to pay Plaintiff the benefits due and owing under" the alleged severance provision contained in the Employment Agreement.[5] (Pl. Compl., ¶ 24.) Grossman premises his ERISA claim on the Act's civil enforcement provision, which authorizes suit by a plan participant "to recover benefits due to him under the terms of his plan . . . ." 29 U.S.C. § 1132(a)(1)(B). Defendants, however, contend that the Complaint does not allege the existence of a plan governed by ERISA. The Court agrees and will therefore dismiss Count I for failure to state a viable claim.

The various rights and protections afforded by ERISA "apply to any employee

[5]Defendants argue that the Employment Agreement does not actually create a severance arrangement since it requires Plaintiff to "fulfill his duties" during the two year notice period. (See Def. Br., pp. 11-12.) However, on a motion to dismiss under Rule 12(b)(6), a district court accepts as true the allegations in the complaint. See Oshiver, 38 F.3d at 1384. The Court will therefore assume, for the purpose of deciding this motion to dismiss, that the Employment Agreement contains a severance plan entitling Plaintiff to the sum of two years' salary, the value of his car allowance, and the value of his vacation and health benefits. (See Pl. Compl., ¶ 15.)

benefit plan if it is established or maintained . . . by any employer engaged in commerce or in any industry or activity affecting commerce . . . ." 29 U.S.C. § 1003(a)(1). The terms "employee benefit plan" and "plan" are used synonymously in ERISA, and are defined as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." Id. § 1002(3).

This Court has previously recognized that a severance arrangement can constitute an "employee welfare benefit plan."[6] E.g., Frommer v. Celanese Corp., Civil No. 07-4066, 2007 U.S. Dist. LEXIS 84430, at *7 (D.N.J. Nov. 15, 2007). However, "'since ERISA applies to a severance arrangement only if it rises to the level of a 'plan,' it is essential to determine whether a plan exists in a given set of circumstances.'" Brennan v. Cephalon, Inc., Civil No. 04-3241, 2005 U.S. Dist. LEXIS 25170, at *50 (D.N.J. Oct. 25, 2005) (citation omitted). "The key to determining whether an ERISA severance plan exists is the 'degree to which administration is involved in the arrangement.'" Id.

---

[6]Under ERISA, an "employee welfare benefit plan" is defined as

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . , to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of . . . unemployment . . . .

29 U.S.C. § 1002(1).

(citation omitted).

A severance arrangement will create an ERISA-governed plan only if the arrangement "requires an ongoing administrative program to meet the employer's obligation." Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 11 (1987); see also Angst v. Mack Trucks, Inc., 969 F.2d 1530, 1538 (3d Cir. 1992) ("[S]everance benefits do not implicate ERISA unless they require the establishment and maintenance of a separate and ongoing administrative scheme."). ERISA is implicated when a severance plan places "periodic demands on [an employer's] assets that create a need for financial coordination and control." Fort Halifax, 482 U.S. at 12. The Act is not implicated, however, where a severance arrangement requires the employer to make a "lump-sum payment triggered by a single event" or where the employer's obligation is satisfied by "do[ing] little more than writ[ing] a check . . . ." Id.

According to the Third Circuit, "[a]n ERISA plan exists 'if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.'" Gruber v. Hubbard Bert Karle Weber, Inc., 159 F.3d 780, 789 (3d Cir. 1998) (quoting Deibler v. United Food & Commercial Workers' Local Union 23, 973 F.2d 206, 209 (3d Cir. 1992)). Moreover, "the crucial factor in determining whether a 'plan' has been established is whether the employer has expressed an intention to provide benefits on a regular and long-term basis." Id. (citing Deibler, 973 F.2d at 209).

Although whether an ERISA plan exists is "a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person," Deibler, 973 F.2d at 209, on a motion to dismiss the Court must determine whether the Complaint alleges plausible grounds for relief, see Twombly, 127 S. Ct. at 1965-55. For this reason, this Court has on several previous occasions examined ERISA claims on motions to dismiss in order to determine whether they sufficiently allege the existence of ERISA-governed plans. See, e.g., Brennan, 2005 U.S. Dist. LEXIS 25170, at *16 (dismissing a complaint for failure to allege the existence of an ERISA plan due to the lack of "allegations having to do with the benefits, beneficiaries, administrator, funding, procedures, intentions of [the defendant], and involvement of [the defendant] with regard to the alleged plan").

Chief Judge Brown recently applied these principles in Frommer, 2007 U.S. Dist. LEXIS 84430, when he dismissed pursuant to Rule 12(b)(6) a plaintiff's ERISA claim for severance pay. According to the complaint in that case, the defendant sought to hire the plaintiff away from another company. Id. at *2. As an inducement, the defendant allegedly offered the plaintiff "severance benefits that [were] no less favorable overall" as those offered by the other company, which included a cash payment and COBRA coverage. Id. at *2-3. Notwithstanding these allegations, the court concluded that the plaintiff failed to allege an ERISA plan because the complaint provided no grounds to support an inference that the defendant intended to provide benefits on a regular and

long-term basis that would necessitate an administrative scheme. Id. at *9-10. Likewise, the court could not ascertain from the alleged agreement what benefits were intended, the source of financing, or the procedures for receiving benefits. Id. at *10. Further, even if the court assumed that the defendant intended to provide the same benefits that the other company had provided, this amounted to a lump-sum payment requiring no administrative scheme. Id. at *10-11. Finally, the court rejected the plaintiff's argument that he did not need to allege the establishment of an ERISA plan under the liberal notice pleading standards of the Federal Rules. See id. at *11. Instead, the court noted that the complaint "must allege plausible grounds for relief on the ERISA claim sufficient to raise the right to relief on the ERISA claim 'above the speculative level.'" Id. (quoting Twombly, 127 S. Ct. at 1965-66).

In this case, as in Frommer, the Court concludes that Plaintiff has failed to allege the existence of an ERISA plan established or maintained by Ventressca, Stockwell Company, or JVS Moorestown. The Complaint is devoid of any allegations from which the Court could infer that any Defendant intended to provide benefits on a regular and long-term basis that would necessitate an administrative scheme. Indeed, the Complaint seems to suggest that Grossman was allegedly owed a lump-sum payment of severance benefits. (See Pl. Compl., ¶ 15.) Presumably, this obligation could be satisfied by Defendants merely writing Grossman a check, which, under Fort Halifax, does not require ongoing administration. Likewise, although Plaintiff identifies the benefits he is

allegedly owed, he makes no allegations concerning the source of their financing or the procedures for their receipt.

Additionally, the Court finds unpersuasive Plaintiff's contention that the Employment Agreement has "the trappings of an ERISA 'top-hat plan.'" (Pl. Res. Br., p. 6.) ERISA defines a top-hat plan as "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees. 29 U.S.C. § 1051(2); see Accardi v. IT Litig. Trust (In re IT Group, Inc.), 448 F.3d 661, 665 (3d Cir. 2006). The Third Circuit has held that participants in such plans have an ERISA-based right to sue under contract principles to enforce the plans' terms. E.g., Kemmerer v. ICI Ams., Inc., 70 F.3d 281, 288 (3d Cir. 1995).

In this case, however, the Complaint contains no allegations related to the existence of a top-hat plan. Rather, as discussed in the preceding paragraphs, Plaintiff claims that he is entitled to certain benefits under the alleged severance arrangement, not under a deferred compensation plan. In fact, it appears that Plaintiff raises the top-hat plan allegations for the first time in his brief opposing Defendants' motion to dismiss. Courts cannot consider allegations raised under such circumstances on a motion to dismiss pursuant to Rule 12(b)(6). See Town of Secaucus v. United States Dep't of Transp., 889 F. Supp. 779, 791 (D.N.J. 1995) ("On a 12(b)(6) motion, the district court is limited to the facts alleged in the complaint, not those raised for the first time by counsel

in its legal memorandum.").

For these reaons, the Court concludes that Plaintiff has failed to "allege plausible grounds for relief on the ERISA claim sufficient to raise the right to relief on the ERISA claim 'above the speculative level.'" Frommer, 2007 U.S. Dist. LEXIS 84430, at *11 (quoting Twombly, 127 S. Ct. at 1965-66). Accordingly, Count I will be dismissed for failure to state a claim upon which the Court can grant relief.[7]

B. The Remainder of Plaintiff's Complaint will be Dismissed for Lack of Subject Matter Jurisdiction

*1. Standard on a Motion to Dismiss for Lack of Subject Matter Jurisdiction*

A motion to dismiss under Rule 12(b)(1) challenges the Court's "authority or competence to hear and decide the case before it." 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (3d ed. 2004). In the absence of subject matter jurisdiction, this Court is without power to hear the case. See Cohen v. Kurtzman, 45 F. Supp. 2d 423, 429 (D.N.J. 1999). The party asserting jurisdiction bears the burden of demonstrating in the record that jurisdiction is proper. Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993).

In evaluating a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction the Court must determine whether the motion attacks the complaint as deficient on its face, or whether the motion attacks the existence of subject matter

[7]Because the Court has concluded that the Complaint fails to adequately allege the existence of an ERISA plan, it need not address Defendants' additional argument that they are not the proper parties against whom Plaintiff may bring an ERISA claim.

jurisdiction in fact. Turicentro, S.A. v. Am. Airlines Inc., 303 F.3d 293, 300 & n.4 (3d Cir. 2002). When a Rule 12(b)(1) motion facially attacks the complaint, the Court must take all allegations in the complaint as true. Id. at 300 n.4. However, when the motion attacks the Court's jurisdiction in fact, no presumptive truthfulness attaches to plaintiff's allegations and "the court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings." Id.

*2. Analysis of Defendants' Motion to Dismiss the Balance of the Complaint*

As previously discussed, the Complaint in this action contains six counts. Of these, only Count I, which asserts a violation of ERISA, presents a federal question. The remaining counts assert various state law claims. However, the Complaint contains no allegation of diversity of citizenship such that this Court would have original jurisdiction over these state claims. Rather, the Complaint indicates that "[t]he Court has supplemental jurisdiction over Plaintiff's non-federal claims pursuant to 28 U.S.C. § 1367." (Pl. Compl., ¶ 5.) Defendants argue that because Grossman's ERISA claim has been dismissed, the Court should also dismiss the balance of the Complaint for lack of subject matter jurisdiction. The Court agrees.

The general rule of section 1367 provides, in relevant part, that

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). However, the statute also permits a district court to decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. Id. § 1367(b)(3). The Third Circuit "has recognized that, 'where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000).

In this case, the Court dismissed Plaintiff's ERISA claim, which was the only claim over which it has original jurisdiction. Plaintiff does not present–and the Court cannot conceive of–any argument regarding judicial economy, convenience, fairness, or any other factor that might weigh in favor of retaining jurisdiction over the pendant state law claims that remain. Because it is still very early in this litigation, the Court concludes that the most prudent course of action is to dismiss without prejudice the balance of the Complaint so that Grossman may, if he chooses, file his state claims anew in state court.[8] See Davis v. Township of Hillside, 190 F.3d 167, 171 (3d Cir. 1999) (indicating that a district court has the discretion to dismiss pendant state law claims without prejudice after

[8]Defendants also argue that the Court should dismiss Plaintiff's state law claims on their merits for various reasons. (See Def. Br., pp. 36-38.) The Court cannot do so, however, because it has declined to exercise its supplemental jurisdiction over these claims. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991) (citing Bell v. Hood, 327 U.S. 678, 682 (1946)) ("[A] court must assume jurisdiction over a case before deciding legal issues on the merits.").

having dismissed the plaintiff's federal claim).

## III. CONCLUSION

For the reasons stated above, Defendants' cross-motion to dismiss Count I of the Complaint for failure to state a claim will be granted. Additionally, the Court will grant Defendants' cross-motion to dismiss the remaining counts in the Complaint for lack of subject matter jurisdiction. However, the latter dismissal will be ordered without prejudice. An appropriate Order reflecting these decisions will accompany the entry of this Opinion.

/s/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
United States District Judge

Dated: February 28, 2008